## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

WENDY FRIEDRICH                            :
5716 Keenan Court                          :
Bensalem, PA 19020                         :
                                           :     CIVIL ACTION
            Plaintiff,                     :
                                           :     No. 21-cv-1744
      v.                                   :
                                           :
TERRA ABSTRACT, INC.                       :
1581 N. Main Street, Suite 200             :     **JURY TRIAL DEMANDED**
Warrington, PA 18976                       :
            and                            :
STERN & EISENBERG, P.C.                    :
1581 N. Main Street, Suite 200             :
Warrington, PA 18976                       :
                                           :
            Defendants.                    :

---

## FIRST AMENDED CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      This action has been initiated by Wendy Friedrich (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) to redress violations by Terra Abstract, Inc. and Stern & Eisenberg, P.C. (*hereinafter* referred to collectively as "Defendants") of the Fair Labor Standards Act ("FLSA" - 29 U.S.C. § 201, *et. seq.*), the Pennsylvania Minimum Wage Act (PMWA" – 43 Pa. Stat. § 333.104, *et. seq.),* the Americans with Disabilities Act, as Amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Human Relations Act[1], 43 Pa.C.S. § 951 *et seq.* ("PHRA"), and the Family and Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601–2654).  In

---

[1] A reference to claims under the PHRA is made herein only for notice purposes. Plaintiff's case was administratively closed with the EEOC and she has thus been required to timely initiate the instant amendment. However, she will seek leave to amend this complaint by adding identical claims (as alleged under ADA) once such claims are also fully administratively exhausted on April 12, 2022.

short, Plaintiff was not properly paid overtime compensation during her period of employ with Defendants and was terminated due to her serious medical condition and her real or perceived disability just four days prior to becoming eligible for FMLA leave.

## JURISDICTION AND VENUE

2.      This action is initiated pursuant to a federal law.  The United States District Court for the Eastern District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact. This Court would alternatively have jurisdiction under 28 U.S.C. § 1332 due to complete diversity and economic-qualifying claims for relief.

3.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b) (1), venue is properly laid in this district because Defendants are residents of this district. And the transactions or occurrences underlying Plaintiff's claims occurred within this District.

5.      Plaintiff has adequately exhausted her administrative remedies under the ADA as she timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and brought the instant suit within ninety (90) days of receiving case closure / right to sue letters from the EEOC.

**PARTIES**

5.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.    Plaintiff is an adult individual, with an address as set forth in the caption.

7.    Terra Abstract, Inc. ("Defendant TAI" where referred to individually) was founded in 1995 by attorneys. Defendant TAI has and continues to provide title search and settlement services for real estate transactions.

8.    Stern & Eisenberg, P.C. ("Defendant SE" where referred to individually) is a Southeastern Pennsylvania law firm focusing in several areas of legal practice, including real estate.

9.    Defendants TAI and SE are properly considered a single, joint and/or integrated employer of Plaintiff. Both entities oversaw the terms of and conditions of Plaintiff's employment and in essence an entangled and joint operations. Some examples of this include but are not limited to:

(1) Plaintiff was paid through Defendant TAI, and she received wage and tax information by and through Defendant TAI;

(2) Plaintiff was publicly held out as an employee of Defendant TAI, and the public would otherwise assume Plaintiff was an employee primarily of Defendant TAI;

(3) Defendant TAI and SE are located in the same building and the same suite;

(4) Defendant TAI is overseen by, managed by, and operated by Defendant SE;

(5) Defendant SE advertises for it's "affiliated title agency, Terra Abstract" on its own website;[2] and

---

[2] *See* https://sterneisenberg.com/practices/real-estate-law/

3

(6) Defendants do not even try to maintain separate businesses without shared employees. Defendant SE's control over terms and conditions of employees such as Plaintiff is so pervasive, extensive, and direct that:

    i. Plaintiff's offer of employment and hiring information came from Defendant SE;

    ii. Dionne Daniels-Murray ("Murray") is the "HR Manager" of Defendant SE who administers benefit, leave, and compensation issues to and for employees of Defendant TAI and SE;

    iii. When Plaintiff was terminated from her employment on 3/5/21, the written communication and termination was by Defendant SE and through Murray; and

    iv. Following Plaintiff's termination, Defendant SE demanded all equipment or property of Defendant TAI to be returned.

(7) Thus, while Plaintiff may have been paid through Defendant TAI and represented to the public as an employee of Defendant TAI, she was controlled, managed, terminated, and had her benefits administered by Defendant SE.

10.    There is simply no question that Defendants, who operate from the same physical office with the same shared staff / management, jointly employed Plaintiff.

11.    At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

**A.    Facts Relating to Plaintiff's Wage and Hour Claims**

12.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

4

13.     Plaintiff was employed with Defendants for approximately 1 year. More specifically, Plaintiff was employed from or about March 9, 2020 through on or about March 5, 2021.

14.     While in the employ of Defendant, Plaintiff's direct supervisor was Carla Reyes (who was referred to as the "Executive Director").

15.     During Plaintiff's entire approximate year of employment, Plaintiff was referred to as a Settlement Officer. Plaintiff's general job and primary duties consisted of the following:

> (1) Defendants marketed the product of providing title searches and handling closings, and Plaintiff had to assist with providing the very service (and product) for which Defendants were compensated;
>
> (2) Plaintiff processed immense paperwork, verified loan information and payoffs, among other fees and costs;
>
> (3) Plaintiff engaged in tremendous data entry and document printing, sorting, and document collection;
>
> (4) Plaintiff prepared other requested template documentation to finalize a title search, closing or other matters related to the real estate transaction;
>
> (5) Plaintiff would physically or otherwise assist with an actual real estate closing and handle the transfer of checks and signed documentation; and
>
> (6) Defendants were paid for each transaction and closing Plaintiff finalized or handled.

16.     Plaintiff was paid a salary of $55,000.00 for her aforesaid job role, and her pay and salary remained the same regardless of actual hours worked.

17.     Compensation via salary is no indicator as to whether someone is overtime eligible. Rather, an employee must perform an "exempt" job role for a company to be ineligible for overtime compensation. Plaintiff's job role within Defendants *is uniformly known* throughout the United States and under applicable jurisprudence to be *unequivocally* a non-exempt role.

18.     Plaintiff was hired when the COVID-19 pandemic was beginning to peak, and Defendants lost many similarly situated employees. As result, Defendants relied very heavily on limited staff to complete <u>very substantial</u> workloads.

19.     Plaintiff worked early mornings, throughout long days, evenings, and weekends. Plaintiff estimates averaging approximately 60-hour workweeks (as she sometimes worked more).

20.     Plaintiff's overtime rate (if she were legally paid) was $<u>39.66</u> per hour. Exclusive of a week in which Plaintiff was ill (and subsequently terminated for requiring medical attention), Plaintiff was not paid approximately $<u>39,660.00</u> in overtime compensation (***without consideration*** of double or liquidated damages, which are supposed to be "<u>automatic</u>").

21.     There are only 3 exemptions that Defendants generally argue or assert in overtime lawsuits, which are then in turn then rejected by courts in similar cases to this one. Hence, Plaintiff quickly addresses them factually to explain their inapplicability.

22.     Plaintiff was not a management or executive employee subject to the "executive exemption," as Plaintiff did not: (a) supervisor 2 or more employees; (b) make policies of Defendants; (c) hire and terminate employees; and (d) perform the primary duties of management of Defendants' organization. *See* 29 C.F.R. § 541.100.

23.     Plaintiff possesses a high school degree, no college degrees, and she does not hold any real estate or insurance licenses or certifications (as no such licensure was required for Plaintiff's routine role). She had prior experience in similar roles pre-hire (but that is irrelevant to an overtime-exemption analysis). Defendant could not assert that Plaintiff met the "professional" exemption from overtime, as this type of exemption is only applicable to individuals (such as doctors, lawyers, CPAs, and other professionals) who <u>require</u> an advanced "academic" degree in

order to perform their job. *See* 29 C.F.R. § 541.301. The regulations exclude from the exemption any employees who learned the job over time, in an apprenticeship, or on-the job. *Id*; *see also e.g. Pignataro v. Port Auth.,* 593 F.3d 265, 271 (3d Cir. 2010)(affirming judgment in favor of helicopter pilots for non-payment of overtime because they lacked an advanced degree at a graduate level from a university and learning their jobs over a period of time or through apprenticeships renders any FLSA exemption inapplicable).

24.     Plaintiff cannot meet any "administrative" exemption(s) for 2 separate reasons. First, this exemption only applies to individuals who are not involved with providing the very service or product(s) offered by Defendants.[3] Second, it's well known that routine real estate-

---

[3] Employees such as human resources personnel, quality service employees, and other higher-level employees involved with administering the internal operations of a company are "administrative" employees because they internally administer the operations of the business (and are unrelated to revenue generation). Elaborating on this clear dichotomy, the Court in *Koehler v. Freightquote.com, Inc*., 2015 U.S. Dist. LEXIS 89691, 46-47 (D. Kan. 2015), explained:

> The Ninth Circuit held in *Bratt v. County of Los Angeles* **that the "essence" of an administrative job is that an administrative employee participates in "the running of a business, and not merely . . . the day-to-day carrying out of its affairs."** 912 F.2d 1066, 1070 (9th Cir. 1990) (quotation omitted). More recently, the Ninth Circuit concluded that, **"The administration/production distinction thus distinguishes between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'"** *Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1127 (9th Cir. 2002) (quotation omitted). **The Seventh Circuit characterized the distinction this way: "[W]hen an employee is engaged in the core function of a business, his or her task is not properly categorized as administrative."** *Schaefer-LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 574 (7th Cir. 2012).
>
> *Koehler*, at ** 46-47. (emphasis added).

An employee can perform the most complex job on planet Earth, but if she is providing **the very service** that the company offers, she is a "production" employee, not administrative. S*ee also Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2nd Cir. 2009)("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990)(the dichotomy distinguishes between "those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market"); *Martin v. Cooper Elec. Supply Co*., 940 F.2d 896, 904 (3d Cir. 1991)(Only work that is "ancillary to an employer's principal production activity" is administrative.). **Plaintiff provided *the very core service* offered by Defendants, and thus was a "production employee," not an administrative employee (such as HR personnel or a controller who just internally administer the business itself).**

related jobs that are far more complex than that of Plaintiff are non-exempt because: (a) they are "routine;" (b) do not require any high-level or corporate-level discretion; and (c) based upon standard procedures that must be followed.[4]

25.    Defendants also violated state and federal wage laws by not **in any manner** *tracking Plaintiff's work time* while she was working all hours of the day and weekend to keep up with an overbearing workload, entitling a court to accept Plaintiff's "estimate" of hours worked each week.[5]

---

[4] *See e.g. Relyea v. Carman, Callahan and Ingham, L.L.P*., 2006 U.S. Dist. LEXIS 63351 (E.D.N.Y. 2006)(Real estate closers reviewing reports, certificates of occupancy, and handling insurance and other real estate paperwork at closings **could not possibly meet** the administrative exemption as they did not make business decisions within the company central to business operations **and** their responsibility was to primarily *offer the services offered by their employer, making them production employees*); *Solis v. A-1 Mortg. Corp*., 934 F. Supp. 2d 778 (W.D. Pa. 2013)(granting summary judgment to plaintiffs for overtime violations, as the evidence reflected plaintiffs' jobs consisted of working as real estate loan officers handling closings, which are non-exempt roles); *Bollinger v. Residential Capital, LLC*, 863 F. Supp. 2d 1041 (W.D. Wash. 2012)(granting plaintiff's motion for summary judgment because plaintiff's job of handling financial services and mortgage matters with clients of the defendant could not meet the administrative exemption, entitling plaintiff to overtime); *Barnett v. Wash. Mut. Bank*, 2004 U.S. Dist. LEXIS 15661 (N.D. Cal. 2004)(granting summary judgment to mortgage consultants and loan officers because they were primarily engaged in production and providing products for employer); *Pontius v. Delta Fin. Corp*., 2007 U.S. Dist. LEXIS 90268 (W.D. Pa. 2007)(Refusing to grant interloculatory appeal after granting plaintiffs summary judgment in collective action explaining that mortgage analysts and financial employees offering loan products or refinancing cannot meet the administrative exemption, **as they are merely production employees producing income for the business**).

[5] The failure of an employer to abide by mandatory record-keeping of hours worked each day by an employee violates 29 U.S.C. § 211(c).  As a result, **an employee's estimates of hours typically worked may be accepted**. *See e.g. Zeng Liu v. Jen Chu Fashion Corp*., 2004 WL 33412, at *8 (S.D.N.Y. 2004). An employee is not supposed to be prejudiced by having to prove with any specificity actual hours worked **due to** Defendants' own failure to abide by state and federal payroll and recordkeeping requirements.

26.     Plaintiff's actual entitlement under the FLSA and applicable state law(s) is approximately **$79,320.00** as any owed overtime is automatically doubled.[6] This is separate and apart from costs, other penalties, and mandatory attorney's fees. *See* 29 U.S.C. § 216(b)(a prevailing plaintiff "shall" be entitled to attorney's fees).

27.     Defendant's reckless, willful and intentional violation of the FLSA and applicable state law(s) is further evidenced by *inter alia*:

> (A) It being obvious than anyone in Plaintiff's role nationally is entitled to overtime pay;
>
> (B) The basic and fundamental failure to even attempt to comply with record-keeping laws; and
>
> (C) Defendant are operated and overseen by a law firm that proclaims a mastery or specialty in "regulatory compliance," yet refuses to follow basic state and wage laws.

## B.     Facts Relating to Plaintiff's Wrongful Termination

28.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[6] *See e.g. Solis v. Min Fang Yang*, 345 Fed. Appx. 35 (6th Cir. 2009)(Affirming award of liquidated damages explaining "under the Act, liquidated damages are compensation, not a penalty or punishment, and no special showing is necessary for the awarding of such damages. Rather, they are considered the norm and have even been referred to by this court as mandatory."); *Gayle v. Harry's Nurses Registry, Inc*., 594 Fed. Appx. 714, 718 (2d Cir. 2014)(Affirming award of liquidated damages explaining there is an automatic "presumption" of liquidated damages and "double damages are the **norm,** single damages the exception," as the burden to avoid liquidated damages is a "difficult burden."); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014)(Affirming award of liquidated damages explaining they are the "norm" and "mandatory" unless the employer can establish the very "difficult burden" of subjective and objective attempts at FLSA compliance); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942 (8th Cir. 2008)(Affirming award of liquidated damages explaining that the employer mistakenly argues its non-compliance was not willful, misunderstanding the high burden to show affirmative steps of attempted compliance and research of the FLSA and separately that its diligence and belief in non-payment of overtime was also objectively reasonable.); *Chao v. Hotel Oasis, Inc.,* 493 F.3d 26 (1st Cir. 2007)(Affirming award of liquidated damages explaining that they will always be considered the "norm" in FLSA cases); *Lockwood v. Prince George's County,* 2000 U.S. App. LEXIS 15302 (4th Cir. 2000)(Affirming award of liquidated damages explaining they are the "norm" and that an employer may not take an ostrich-like approach and refuse to research its obligations under the FLSA and to objectively explain why it failed to comply with the FLSA); *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999)(Reversing the district court for not awarding liquidated damages, as doubling unpaid overtime is the rule, not an exception); *Nero v. Industrial Molding Corp*., 167 F.3d 921 (5th Cir. 1999)(Affirming award of liquidated damages, as there is a presumption of entitlement to liquidated damages which are the norm).

29.     During the period of her employment, Plaintiff was an exemplary, hard-working employee and had no history of performance issues or discipline.

30.     Plaintiff became seriously ill in or around February and March of 2021 as the result of numerous health complications.

31.     Up until this point, Plaintiff had not missed any time from work due to her serious medical condition as she would continue working through her health issues.

32.     On or about or about February 23, 2021, Plaintiff informed Defendants that she very sick, fell on the floor, and was having memory loss.

33.     Plaintiff's husband followed up with a call to Defendants explaining Plaintiff's serious medical condition and that she could not communicate, was blacking out and could not even care for or talk with her family.

34.     On or about March 2, 2021, Defendants vaguely mentioned FMLA to Plaintiff (without providing Plaintiff any actual documents or notification) via e-mail.

35.     On or about March 3, 2021, Plaintiff emailed Defendants stating, "I am just getting to a point of being physically able to conduct limited interaction myself" . . . "Hopefully I continue to regain my strength. I will let you know when my next appointment is after follow up with the Dr. today."

36.     On or about March 3, 2021, Defendants informed Plaintiff that she could face termination unless she applied for FMLA, to which Plaintiff responded: "I fully understand . . . my situation prior to today hasn't afforded me any ability to communicate with you in any way." Plaintiff further indicated she would obtain and produce any required medical documentation.

37.     On or about March 5, 2021, Defendants terminated Plaintiff via e-mail *before she could provide any* medical documentation.

38.     Plaintiff would have been eligible for FMLA leave as of March 9, 2021.

39.     Plaintiff was thus denied a reasonable interactive process and clearly reasonable medical accommodation in the form of a short medical leave of absence.

40.     Plaintiff was thus interfered with and prevented from exercising her rights under the FMLA.

## Count I
## Violations of the Fair Labor Standards Act ("FLSA")
### (Overtime Violations)

41.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.     At all times relevant herein, Defendants have and continues to be employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. §203 ("FLSA").

43.     At all times relevant herein, Defendants to this Action were responsible for paying wages to Plaintiff.

44.     At all times relevant herein, Plaintiff was employed with Defendants as an "employee" within the meaning of the FLSA.

45.     The FLSA requires covered employers, such as Defendants, to minimally compensate its "non-exempt" employees, such as Plaintiff, 1.5 times the employee's regular rate of pay for each hour that the employee works over 40 in a workweek.

46.     At all times during her employment with Defendants, Plaintiff was a "non-exempt" employee within the meaning of the FLSA.

47.     Throughout Plaintiff's employment with Defendant, Plaintiff was never paid overtime compensation. As outlined *supra*, Plaintiff is owed approximately 79,320.00, plus legal fees, costs, and other equitable and legal damages available.

48.     Defendant's actions constitute willful violations of the FLSA.

**Count II**
**Violations of the Pennsylvania Minimum Wage Act ("PMWA")**
**(Overtime Violations)**

49.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50.     Defendants' failure to pay overtime in the aforesaid manners also constitutes a violation of the PMWA.

**COUNT III**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination [2] Retaliation**
**[3] Failure to Accommodate)**

51.     The foregoing paragraphs are incorporated herein by reference as though set forth in full.

52.     At all relevant times, Plaintiff was qualified to perform all of the essential functions of a Settlement Officer with or without reasonable accommodations.

53.     Plaintiff suffered from qualifying disabilities under the ADA.

54.     Plaintiff's disability, at times, affected her ability to perform daily life activities, including but not limited to working at times, and other daily life activities.

55.     Defendants terminated Plaintiff immediately prior to her becoming eligible for FMLA leave (and in addition to such actions constituting an FMLA interference violation), same are also violative of Plaintiff's right to be accommodated under the ADA.

56.     Defendants could have easily continued to accommodate Plaintiff if she desired additional reasonable leave to enable to her to fulfill his job duties upon her return to work.

57.     Defendants terminated Plaintiff due to her disabilities, perceived disabilities, and/or in retaliation for requesting reasonable accommodations.

58.     These actions as aforesaid constitute violations of the ADA.

**Count IV**
**Violation(s) of the Family and Medical Leave Act ("FMLA")**
**(Interference & Retaliation)**

59.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

60.     Defendants terminated Plaintiff on March 5, 2021, *just four days prior* to her becoming eligible for FMLA leave on March 9, 2021.[7]

61.     Defendants were acutely aware of Plaintiff's serious medical condition and her upcoming eligibility and need to utilize FMLA.

62.     All of Defendants' actions as discussed *supra* constitute interference and retaliation violations of the FMLA, and also unlawful dissuasion.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' wrongful actions, including but not limited to past lost earnings and unpaid wages / overtime compensation;

B.     Plaintiff is to be awarded liquidated and punitive damages as permitted by applicable law and to deter Defendant or other employers from engaging in such misconduct in the future;

C.     Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate; and

---

[7] *See e.g.* Beffert v. Pa. Dep't. Of Pub. Welfare**,** No. Civ. A. 05-43, 2005 WL 906362, at *3 (E.D. Pa., April 18, 2005); *O'Brien v. Lehigh Valley Health Network, Inc.*, No. 5:18-cv-03119, 2019 U.S. Dist. LEXIS 107632, at *11 (E.D. Pa. June 27, 2019)

      D.      Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as permitted by applicable law

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

*/s Christine E. Burke*

_____

Ari R. Karpf, Esq.
Christine E. Burke, Esq.
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  August 18, 2021